UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MATTHEW G. STEPHENS                         CIVIL ACTION NO. 14-cv-2504

VERSUS                                      JUDGE FOOTE

TIM KIETH                                   MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

    Matthew G. Stephens ("Petitioner") was convicted in a Caddo Parish bench trial of possession with intent to distribute methamphetamine and possession of Lortab (hydrocodone). He admitted to being a fifth-felony habitual offender, and Judge Craig Marcotte sentenced him to concurrent sentences of 50 years at hard labor. The convictions and sentences were affirmed on appeal. State v. Stephens, 114 So.3d 1265 (La. App. 2d Cir. 2013), writ denied, 130 So.3d 342 (La. 2014). Petitioner now presents a federal habeas petition that raises the same two issues he presented on appeal: (1) insufficiency of the evidence and (2) excessive sentence. For the reasons that follow, it is recommended that the petition be denied.

**Sufficiency of the Evidence**

    A. Introduction

    Petitioner filed this petition by completing a form. He did not submit a memorandum or otherwise flesh out his claims. The entirety of his argument on the sufficiency of the

evidence is: "The evidence presented by the State at trial failed to prove that defendant actually or constructively possessed any controlled dangerous substances." The argument by appellate counsel on direct appeal was lengthier, but it was also a general attack on the sufficiency of the evidence of possession. Tr. 510-16. The evidence will be reviewed with a focus on the facts related to Petitioner's possession of the substances.

### B. Relevant Facts

Agent Robert Robinson, a Shreveport Police Department narcotics investigator, testified that he had been investigating Petitioner and Jade Cofer. He received information that Petitioner would be bringing a large amount of methamphetamine to Ms. Cofer's home in two black bags. Robinson used that and other information to obtain a warrant to search Cofer's house. Police elected not to attempt to arrest Petitioner by a traffic stop, because they feared a dangerous car chase would ensue. Petitioner later admitted that he probably would have tried to outrun the police. The officers instead waited until Petitioner arrived at Cofer's house, then executed the search warrant. Surveillance cameras at the home alerted persons inside to the presence of police. Petitioner and others tried to escape through the back door but were apprehended.

Police found a purse that contained Xanax and methamphetamine, and Ms. Cofer admitted the items belonged to her. The officers also found in the house a black bag on the sofa, inside of which was another bag. Agent Robinson testified that the bags contained methamphetamine, cocaine, and Lortab, as well as unused baggies, syringes, spoons, and "gadgets" that are used by methamphetamine users. Robinson testified that users often play

with flashlights and other trinkets while high, and Petitioner's nickname was "Gadget Man." The contents of the bags matched Robinson's expectations based on the information he had received during his investigation.

Petitioner waived his Miranda rights and gave a video-recorded statement. He admitted that the bag belonged to him, that he was a drug dealer, and that he had some ecstacy and methamphetamine in the bag earlier, but he claimed to have dropped off the drugs before coming to Ms. Cofer's house. Petitioner claimed that he knew Cofer's house was "hot" so he did not bring drugs there. He also admitted that he and Cofer had a relationship, and they sold drugs together. Inconsistent with his claim that he knew the house was being watched by police, he admitted that he bought $400 worth of drugs from Cofer when he arrived that day. He said he handed those drugs to another occupant of the house when the police raid started.

Robinson said that all of the other persons in the house said that Petitioner had brought the black bag into the home. The police did not find any other black bags in the home. However, there was no DNA or fingerprint evidence that linked Petitioner to the bag, and Petitioner had no drugs on his person when he was arrested. A total of 22 grams of methamphetamine was recovered from the bags, and witnesses testified that the quantity, clean syringes, and packaging material indicated that the owner of the bag was in the business of distributing drugs.

A Crime Lab technician testified that he determined by testing that the substance in the bag was methamphetamine. He determined by appearance and markings that pills found

in the bag contained hydrocodone in combination with a non-narcotic ingredient, being a Schedule III substance. The pills were a generic version of Lortab.

The evidence also included recordings of telephone conversations Petitioner made from the jail to his sister. They discussed the fact that the State had obtained a DNA swab from Petitioner, and Petitioner said that he thought it was for a "syringe or something." He said that if there were syringes in the bag, he did not know if any were dirty, but they might have been. He said he did not care about it because linking him to a used syringe would just make him look like a "drug head" (as opposed to a dealer). He also described where different items were in the bags, such as that "the dope was in a little bitty bag, you couldn't fit a syringe in the bag that the dope was in, it was a little bitty zip handbag you know." He said that the syringes "were in another big black, like another, like a satchel black bag thing." Agent Robinson said he never told Petitioner exactly how the contents of the bags were packaged, but he admitted the telephone conversations took place after initial discovery was given to the defense. The discovery material produced included Robinson's report, which did contain such information.

### C. The Verdict

Judge Marcotte heard arguments and then gave detailed reasons for his verdict. He stated that he had taken "very detailed notes," and he reviewed the testimony of the witnesses. He noted that he also twice watched Petitioner's recorded statement, which was approximately one and a half hours long. He compared Petitioner's statements during the interview to what Agent Robinson testified to on the stand and what Petitioner later said in

the recorded phone call with his sister. He noted Petitioner's claim that, although he knew that the house was hot, he purchased $400 worth of drugs inside. He noted that Petitioner said he handed those drugs to another occupant, Ms. Ezernack, who put them in her mouth when the raid began, but police found no drugs in Ms. Ezernack's mouth, and no $400 was recovered. The judge also noted inconsistencies between the jail call that talked about where syringes were in the bags with the recorded statement in which syringes were never mentioned. Based on the evidence, the court found that the State had proven its case beyond a reasonable doubt. Tr. 415-19.

**D. Analysis**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The Jackson inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 113 S.Ct. 853, 861 (1993).

This claim was adjudicated on the merits in state court. Habeas corpus relief is available with respect to such a claim only if the state court adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the already deferential Jackson standard. Parker v. Matthews,132 S.Ct. 2148, 2152 (2012); Harrell v. Cain, 595 Fed. Appx. 439 (5th Cir. 2015).

The state appellate court reviewed the trial evidence in great detail. It also set forth the correct Jackson standard of review and the elements of the crimes that the State had to prove. Petitioner's habeas petition challenges only the possession element.

The state appellate court noted that constructive possession is sufficient to convict under Louisiana law, and circumstantial evidence, including attempt to avoid apprehension, may be considered. The court noted that Petitioner admitted he owned the black bag, and all other persons in the house said that Petitioner carried the bag into the house. The critical issue was whether he also possessed the drugs that were found in the bag. Petitioner claimed to lack knowledge of the drugs, but he admitted he was a drug dealer and had stored drugs in the bag earlier that same day. The court noted that police quickly executed the search warrant soon after Petitioner entered the home, which allowed the trial judge to reasonably reject any argument that enough time had passed for someone else to put drugs in the bags after Petitioner entered the home. The court also noted Petitioner's attempted flight from the home and his telephone admissions that suggested intimate knowledge of what was contained in the bags. The appellate court found that the direct and circumstantial evidence was

sufficient, when viewed in a light most favorable to the prosecution, for a rational trier of fact to have found that Petitioner possessed the drugs. State v. Stephens, 114 So.3d at 1266-72.

The state court's decision was entirely reasonable. It reviewed the evidence in detail in light of the applicable federal law. It noted the lack of direct evidence of some matters but pointed to other direct and circumstantial evidence that strongly supported the prosecution's theory. The court also honored the rule that it is the responsibility of the fact finder, not the appellate court, to decide what conclusions should be drawn from the evidence. Cavazos v. Smith, 132 S.Ct. 2, 4 (2011). The appellate court's decision was reasonable, so it is not subject to being overturned under the doubly deferential habeas standard.

**Excessive Sentence**

    **A. Introduction**

The trial court originally sentenced Petitioner to 30 years on the Schedule II with intent to distribute count, plus a concurrent 5-year sentence for possession of Schedule III. Tr. 442-43. The State then filed a multiple offender bill to enhance those sentences, and Petitioner pleaded guilty to being a fifth-felony offender. Tr. 460. Petitioner then faced a sentencing range on the Schedule II charge of 30 years to life, plus 20 years to life on the Schedule III charge, and the sentences could be run consecutively. The State argued for life imprisonment, and defense counsel asked for the minimum 30-year sentence. The judge imposed a sentence of 50 years on each count, with the sentences to run concurrently. Tr. 478-81.

Petitioner's entire argument in his federal petition with respect to his sentence is: "Defendant's sentence, although within the statutory range, is excessive and needlessly imposes undue pain and suffering on a person whose criminal history is neither violent nor warrants the imposition of what is, for all practical purposes, a life sentence." Counsel made a similar argument on direct appeal that invoked both the Louisiana Constitution and the Eighth Amendment to the United States Constitution. Tr. 516-19.

### B. Applicable Law

The Supreme Court has reviewed a number of lengthy sentences for multiple offenders. The most defense-friendly case is Solem v. Helm, 103 S.Ct. 3001 (1983), which struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand larceny, and one prior conviction of third-offense DWI. The majority found the sentence was significantly disproportionate to the crime, and Solem prevailed.

"In other cases, however, it has been difficult for the challenger to establish a lack of proportionality." Graham v. Florida, 130 S.Ct. 2011 (2010). In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in <u>Lockyer v. Andrade</u>, 123 S.Ct. 1166 (2003) assessed its prior sentencing decisions, with an eye on their application in habeas cases under the requirement of Section 2254(d) that the state court adjudication run afoul of clearly established Supreme Court precedent. The Court and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by felony petty-theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard.

**C. Analysis and Conclusion**

The trial and appellate courts noted Petitioner's criminal record, which began with a 1995 federal weapons conviction and a 37-month sentence. There are also two convictions of distribution of marijuana, a guilty plea to possession of Schedule II drugs, a parole revocation, and a recent guilty plea to a federal charge of unlawful transportation of firearms. Petitioner was 36 at the time of sentencing.

The trial judge explained that the sentences imposed were appropriate, and he believed a lesser sentence would deprecate the seriousness of the crimes. Tr. 477-81. The appellate court reviewed the same factors and said it could not find that the sentences were constitutionally excessive. <u>State v. Stephens</u>, 114 So.3d at 1272-73. The undersigned

agrees. The sentences were well within the statutory range, and they do not come close to indicating constitutional excessiveness under the relevant Supreme Court decisions. Petitioner received a reasonable sentence that does not permit habeas relief.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules

Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 2nd day of May, 2017.

Mark L. Hornsby
U.S. Magistrate Judge